IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHERRY BRILLHART        :       No.  4:CV-07-1121
           Plaintiff,       :
                        :       Judge John E. Jones III
           v.            :
                        :
RICHARD E. SHARP,        :
           Defendant       :

## MEMORANDUM AND ORDER

July 21, 2008

This matter is before the court on the motion for summary judgment of

defendant Richard Sharp.  (Doc. 25.)  For the reasons set forth below, the motion

will be granted in part and denied in part.

## I.     MOTION TO STRIKE

Before addressing the summary judgment motion, the Court must resolve

the defendant's pending motion to strike the affidavits of Farley Holt, Esq.,

attorney for the plaintiff Sherry Brillhart, which were submitted in opposition to

summary judgment.  (Doc. 39.)

In her response to the Sharp's statement of material facts in support of

summary judgment, Brillhart submitted an affidavit from Attorney Holt in which

Attorney Holt testifies to his personal observations of Sharp in other court

proceedings and at a local hardware store.  (*See* Doc. 32-3, App. B.)  This affidavit is relied on to dispute Sharp's claim, based on the expert report of Dr. Roger Cadieux, that he "had limited cognitive ability and mobility in 2005."  (*See* Def.'s Statement of Material Facts ["Def. SMF"] ¶ 27; Pl.'s Statement of Material Facts ["Pl. SMF"] ¶ 27.)

In support of her brief in opposition to summary judgment, Brillhart submitted another affidavit from Attorney Holt in which Attorney Holt testifies to his personal observations of the physical appearance of Adam Rineholt[1], a man who alleges that Sharp engaged in inappropriate sexual contact similar to that alleged by the plaintiff here.  (*See* Doc. 36-2, Ex. 1.)  This affidavit is relied on to dispute Sharp's claim, again based on Dr. Cadieux's report, that his dementia renders him unable to differentiate between men and women when engaging in inappropriate behavior.  (*See* Def.'s Br. in Supp. of Summ. J., Doc. 28, at 18; Def.'s Br. in Opp'n  to Summ. J., Doc. 36, at 11.)

Federal Rule of Civil Procedure 56(e) permits affidavits to be submitted in opposition to summary judgment if the affidavit is "made on personal knowledge", sets out "facts that would be admissible in evidence" and "show[s] that the affiant

---

[1] The plaintiff variously refers to this individual as Adam Rineholt and Adam Rhineholt. *Compare, e.g.*, Doc. 36-2, Ex. 1 *with* Doc. 42 at ¶ 4.  For the sake of clarity, the Court will use "Rineholt,"the spelling used in the affidavit executed by this individual.

is competent to testify on matters stated." Fed. R. Civ. P. 56(e); *Maldonado v. Ramirez*, 757 F.2d 48, 50-51 (3d Cir. 1985). "In addition, the affiant must ordinarily set forth facts, rather than opinions or conclusions." *Id.* at 51. While attorney affidavits are permissible under this rule, they are often unadvisable, for some of the reasons set forth by the defendant in his motion to strike. *See Palomba v. Barish*, 626 F. Supp. 722, 725 (E.D. Pa. 1985).

The affidavits submitted by Brillhart appear to be made on personal knowledge as they contain Attorney Holt's personal observations of Sharp and Rineholt. It is highly questionable, however, whether the facts set out in the affidavits would be admissible at trial and whether Attorney Holt would be competent to testify to such facts. As the defendant notes, the rules of this Court and the Pennsylvania Rules of Professional Conduct prohibit an attorney from acting as both an advocate and witness at trial. *See* M.D. Pa. Local Rule 43.1; Pa. R. of Prof'l Conduct 3.7; *see also* M.D. Pa. Local Rule 83.23.2 (incorporating the Pennsylvania Rules of Professional Conduct as rules of this Court). By making himself a witness in this action, Attorney Holt has created an impermissible conflict with his representation of the plaintiff.

Sharp also argues that these affidavits should be stricken as a sanction for Brillhart's failure to disclose Attorney Holt as a potential witness as required by

Rule 26(a). *See* Fed. R. Civ. P. 26(a)(1)(A)(i). Rule 37(c)(1) provides that if a party without substantial justification fails to identify a witness as required by Rule 26(a), it may not use that witness to provide evidence on a motion. Rule 37(c) also authorizes the Court to prohibit the introduction of evidence by a party failing to disclose a witness and to strike an offending pleading. *See* Fed. R. Civ. P. 37(c)(1)(C) (incorporating sanctions set forth in Rule 37(b)(2)(A)(i)-(vi)).

Perhaps recognizing the weaknesses in the attempt to oppose summary judgment through attorney affidavits, Brillhart has filed a motion requesting that the affidavit of Adam Rineholt himself be substituted for Attorney Holt's affidavit purporting to describe Rineholt's appearance.[2] The Court will grant this request. Attorney Holt's affidavit containing his observations of Rineholt will be stricken, and the affidavit of Adam Rineholt will be considered in opposition to the defendant's summary judgment motion.

---

[2] In violation of Local Rule 7.5, the plaintiff has failed to submit a brief in support of this motion, and therefore, the Court could have deemed it withdrawn. The Court notes with concern Attorney Holt's failure throughout this litigation to comply with this Court's deadlines and briefing rules, which has needlessly delayed the resolution of this case. *See, e.g.*, Pl.'s Br. in Opp'n to Mot. for J. on the Pleadings, Doc. 19 (filed 38 days after deadline); Order of April 4, 2008, Doc. 31 (granting an extension until April 18, 2008 to submit an opposition to summary judgment after plaintiff failed to do so); Def.'s Mot. for J. on Record as It Currently Exists, Doc. 35 (requesting the Court rule on defendant's summary judgment motion on the current record after plaintiff failed to file an opposition by extended deadline); Pl.'s Br. in Opp'n to Summary Judgment, Doc. 36 (filed on May 1, 2008, 13 days after extended deadline).

Brillhart continues to oppose Sharp's request to strike Attorney Holt's affidavit containing his observations of the defendant.  The only support provided for this opposition is that the affidavit "contains material facts and issues raised previously in pleadings in the instant case and to which Defendant did not oppose or object."  (Doc. 42 at ¶ 1.)  Attorney Holt's personal observations of the defendant, however, have never been mentioned in any submission in this action, and even if they had been considered for some other purpose, the present affidavit does not meet the requirements of Rule 56(e) because Attorney Holt is not competent to testify to these facts in this action.  Further, to the extent that Brillhart argues that Attorney Holt's affidavit merely reiterates the allegations of her pleadings, the affidavit is also inappropriate to oppose summary judgment. *See* Fed. R. Civ. P. 56(e)(2) (stating that a party opposing summary judgment "may not rely merely on allegations or denials in its own pleading").  Brillhart has not demonstrated that the affidavit meets the requirements of Rule 56(e)(1), and therefore, Attorney Holt's affidavit describing his personal observations of the defendant will be stricken and not considered on the current summary judgment motion.[3]

---

[3] Even were the affidavit to be considered, Attorney Holt's essentially conclusory opinions as to Sharp's competence based on his sporadic observations of the defendant provide little support for opposing summary judgment, *see Shaw by Strain v. Strackhouse*, 920 F.2d

## II.     STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond

---

1135, 1144 (3d Cir. 1990), and moreover, are largely immaterial to the present motion.

pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## III.   BACKGROUND

With this standard of review in mind, the following are the undisputed facts material to the present motion, drawing any reasonable inferences in favor of the non-moving party, Brillhart.

7

At all relevant times, Sharp owned and operated a mobile home park in York, Pennsylvania. (Def.'s SMF ¶ 1.) Brillhart rented a lot in the park beginning in November 2003. (*Id.* at ¶ 2.) On March 10, 2005, Brillhart asked Sharp to come to her lot to make some repairs. (*Id.* at ¶ 5; Compl. ¶ 8.) When Sharp was finished with the repairs, he placed his hands on Brillhart's breasts and stated that he had fixed something for her and now she should be nice to him. (Def.'s SMF ¶ 6; Compl. ¶ 9.) Brillhart told Sharp to stop, but Sharp continued to grab her breasts and stated "it doesn't hurt to feel a little titty." (Compl. ¶¶ at 10-13.) Brillhart was eventually able to move away and again told Sharp to stop, but Sharp followed her and attempted to put his hands under her shirt. (*Id.* ¶¶ at 13-14.) Sharp then attempted to kiss Brillhart and place his tongue in her mouth. (*Id.* ¶ at 15.) Sharp stated that his penis was hard and asked Brillhart if she wanted to see it. (*Id.*) Brillhart told him no. (*Id.*) Sharp then asked Brillhart to have sex with him, and Brillhart refused. (*Id.* at ¶ 16.) Sharp attempted to pull Brillhart's legs apart and again demanded sex, again stating that his penis was hard. (*Id.* at ¶ 17.) Brillhart again resisted, again told Sharp to stop, and attempted to dissuade him by stating that she was having her period. (*Id.* at ¶¶ 16-18.) Sharp was not dissuaded, but rather exposed his penis and demanded oral sex, which Brillhart refused. (*Id.* at ¶ 19; Def.'s SMF ¶ 6.) Finally, Sharp stated he was leaving, but warned

Brillhart that "I do this all the time and I evict anyone who tries to press any charges!" (Compl ¶ 20.)

Sharp continued to harass Brillhart after this incident. (*Id.* at ¶ 22.) Sharp would stare at Brillhart, wink at her, and stick his tongue out whenever he would see her. (SMF ¶ 28; Compl. ¶ 23; Brillhart Dep. at 65:10-15.) Sharp engaged in these actions while Brillhart was at her mailbox, while she was sitting on her porch, while she was walking her dog, and while she was walking around the park. (Compl. ¶ 23; Brillhart Dep. at 58:2-5.) Sharp was either walking or in his vehicle when he engaged in these actions, and was eight to twelve feet from Brillhart. (SMF ¶¶ 23-26; Brillhart Dep. at 58:11-18, 59:20-60:24, 61:6-14, 62:21-25; 65:7-9.) If Brillhart encountered Sharp while on the street in the park, she would cross to the other side, but Sharp would still stare at her. (Brillhart Dep. at 61:12-21.) Sharp's harassment of Brillhart continued until she moved out of the mobile home park during the last weekend of June 2005.[4] (Compl. at ¶ 25.)

As a result of Sharp's conduct, Brillhart suffered from nightmares and suffered a nervous breakdown in April 2005, which led to a suicide attempt. (*Id.* at ¶¶ 26-28.)

---

[4] The complaint alleges only that Brillhart moved out of the mobile home park "during the last weekend of June 2005." (Compl. ¶ 25.) The Court takes judicial notice of the fact that the dates of the last weekend of June 2005 were June 25 and 26.

9

Sharp is accused of engaging in similar sexual assaults and harassment against other tenants of the mobile home park.  (*Id.* at ¶¶ 29-30.)  As a result, Sharp is also the defendant in a civil suit pending in the York County Court of Common Pleas in which six other women and one minor boy accuse him of assault, battery, and intentional infliction of emotional distress.  (*Id.* at ¶ 31; Pl.'s Br. in Opp'n, Doc. 36-2, Ex. 2.)

Sharp was also subject to criminal prosecution for indecent assault and harassment in the York County Court of Common Pleas, but on February 22, 2005 was found to be incompetent to stand trial.  (Def.'s SMF ¶ 9.)  Sharp's medical expert, Dr. Roger Cadieux, diagnosed Sharp, who was 82 years old in 2005, with senile onset dementia.  (*Id.* at ¶¶ 12, 27; Def.'s App., Doc. 27, Ex. D.)  Dr. Cadieux opines that Sharp's dementia is the cause of his inappropriate actions, and that Sharp's actions are not gender based but attention-getting behavior based on impulse.  (Def.'s SMF ¶¶ 13-14, 17.)

Brillhart's complaint in this action was filed on June 22, 2007 and asserts causes of action against Sharp for: (i) violation of the Fair Housing Act ("FHA"), (ii) violation of the Pennsylvania Human Relations Act ("PHRA"), (iii) assault and battery, and (iv) intentional infliction of emotional distress.

## IV.   DISCUSSION

Sharp moves for summary judgment on each claim.  First, he argues that Brillhart's assault, battery, and intentional infliction of emotional distress claims are barred by the statute of limitations.  Second, he argues that Brillhart's FHA and PHRA claims fail because Brillhart has not demonstrated that he intentionally discriminated against her based on her gender.  Each argument is addressed in turn.

### A.   Statute of Limitations

The statute of limitations for assault, battery, and intentional infliction of emotional distress under Pennsylvania law is two years.  42 Pa. C.S.A. § 5524(1), (7).  Brillhart commenced this action on June 22, 2007.  Therefore, if her claims accrued prior to June 22, 2005, they are barred by the statute of limitations.

Under Pennsylvania law, "a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion."  *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (citing *Kapil v. Ass'n of Pa. State Coll. & Univ. Faculties*, 470 A.2d 482, 485 (Pa. 1983)).  Thus, "the statute of limitations begins to run as soon as the right to institute and maintain a suit arises."  *Id.* (citing *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)).  "Generally speaking, in a suit to recover damages for personal injuries,

this right arises when the injury is inflicted." *Id.* (citing *Ayers v. Morgan*, 154 A.2d 788, 791 (Pa. 1959)).  In this case, injury was first inflicted on Brillhart, and her claim therefore accrued, on March 10, 2005.  Because Brillhart did not file suit within two years of this accrual date, her assault, battery, and intentional infliction of emotional distress claims are barred by the statute of limitations.

 Brillhart argues that her claims are saved from the statute of limitations because Sharp engaged in a continuing course of harassment that began on March 10, 2005 and ended on the last weekend of June 2005, within the limitations period.  Although she does not label it as such, Brillhart's argument invokes the doctrines of "continuing violation" or "continuing tort" to equitably toll the statute of limitations.

 The gist of either theory is that when a defendant's actions are part of a continuing pattern of conduct, the plaintiff's suit will be timely if at least one act evidencing this pattern falls within the limitations period.  *See Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (describing continuing violations doctrine as "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred"); *CBG Occupational Therapy,*

*Inc. v. Bala Nursing & Retirement Ctr.*, 2005 WL 280838, at *3 (Pa. Ct. Comm. Pl. Jan. 27, 2005) (stating "[a] continuous tort is one inflicted over a period of time; it involves wrongful conduct that is repeated until desisted.  A continuing tort sufficient to toll the statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation.").

Although relatively few in number, Pennsylvania decisions have applied the continuing tort theory to intentional tort claims.  *See CBG Occupational Therapy, Inc.*, 2005 WL 280838, at *3 (applying a continuing torts analysis to question of whether fraud, conversion, civil conspiracy and tortious interference claims were time-barred); *Dellape v. Murray*, 651 A.2d 638, 640 (Pa. Commw. Ct. 1994) (applying continuing tort theory to tortious interference claim); *Herdelin v. Rosen*, 49 Pa. D. & C.3d 280, 282 (Pa. Ct. Com. Pl. 1988) (same).  *But cf. Dowling v. Philadelphia Newspapers, Inc.*, 29 Phila. Co. Rptr. 135, 142-43 (Pa. Ct. Com. Pl. Feb. 6, 1995) (stating "there is no 'continuing tort' exception to Pennsylvania's one-year statute of limitations for action for defamation or invasion of privacy"). Pennsylvania courts have also applied the continuing violations doctrine in the context of sexual harassment, hostile work environment, and gender discrimination claims, analogous to Brillhart's claims here.  *See, e.g.*, *Barra v. Rose Tree Media Sch. Dist.*, 858 A.2d 206, 213-14 (Pa. Commw. Ct. 2004); *Davitt*

*v. Wood Co.*, 58 Pa. D. & C.4th 279, 282-83 (Pa. Ct. Com. Pl. 2002); *Thomas v.*

*Hershey Chocolate Co.*, 36 Pa. D. & C.4th 334, 338-40 (Pa. Ct. Com. Pl. 1997);

*see also Cowell*, 263 F.3d at 292 ("The continuing violations doctrine has been

most frequently applied in employment discrimination claims.  However, this has

not precluded the application of the doctrine to other contexts.").

"To establish that a claim falls within the continuing violations theory, the

plaintiff must do two things.  First, [s]he must demonstrate that at least one act

occurred within the filing period:  The crucial question is whether any present

violation exists.  Next, the plaintiff must establish that the [alleged wrong] is more

than the occurrence of isolated or sporadic acts." *West v. Philadelphia Elec. Co.*,

45 F.3d 744, 755 (3d Cir. 1995).  In examining this second step, "courts should

consider at least three factors:  (1) subject matter – whether the violations

constitute the same type ..., tending to connect them in a continuing violation; (2)

frequency – whether the acts are recurring or more in the nature of isolated

incidents; and (3) degree of permanence – whether the act had a degree of

permanence which should trigger the plaintiff's awareness of and duty to assert

his/her rights." *Cowell*, 263 F.3d at 292 (citing *West*, 45 F.3d at 755 n.9).

Applied to this case, the continuing violations theory does not save

Brillhart's battery claim.  Brillhart alleges no harmful or offensive touching after

March 10, 2005, and therefore, no act constituting battery within the limitations period. *See C.C.H. v. Philadelphia Phillies, Inc.*, 940 A.2d 336, 345 n.13 (Pa. 2008); *Dalrymple v. Brown*, 701 A.2d 164, 170 (Pa. 1997).

Similarly, Brillhart's intentional infliction of emotional distress claim is also not saved by the continuing violations doctrine. Although base and vulgar in light of Sharp's alleged prior sexual assault of Brillhart, the harassment which continued after the March 10, 2005 incident does not rise to the extremely outrageous level of conduct required to constitute an act of intentional infliction of emotional distress within the limitations period. *See Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) ("The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Described another way, it has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."). In analogous circumstances, courts have found similar conduct not to constitute intentional infliction of emotional distress. *See, e.g., Bougher v. Univ. of*

15

*Pittsburgh*, 882 F.3d 74, 80 (3d Cir. 1989); *Aquino v. Sommer Maid Creamery, Inc.*, 657 F .Supp. 208, 210-11 (E.D. Pa. 1987).

Brillhart's assault claim presents a much closer question.  The Pennsylvania Supreme Court has described an assault as "an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery." *Cucinotti v. Ortmann*, 159 A.2d 216, 217 (Pa. 1960); *see also* Paves v. Corson, 765 A.2d 1128, 1138 (Pa. Super. Ct. 2000); *Sides v. Cleland*, 648 A.2d 793, 796 (1994).  To commit an assault, "the actor must be in a position to carry out the threat immediately, and he must take some affirmative action to do so." *Cucinotti*, 159 A.2d at 217.

Taken in isolation, each of Sharp's actions likely would not constitute assault.  When considered in their totality and in the context of Sharp's sexual assault of Brillhart, however, the Court cannot conclude as a matter of law that no reasonable jury would find that Sharp's actions caused Brillhart to reasonably apprehend a battery.  At her deposition, Brillhart testified that when Sharp would stare, wink, or stick his tongue out at her, that "I would turn my head, and I would look out the corner of my eye because I didn't trust him coming up behind me or anything because he's done it at my trailer."  (Brillhart Dep. at 65:22-25.)  She further stated that, if she saw Sharp approaching on the street, "I'd move to the

16

other side.... I tried to keep my distances, but he would still stare me down. I just didn't trust him." (*Id.* at 61:15-21.) Brillhart clearly feared that Sharp would harmfully or offensively touch her, and with the context of Sharp's prior assault, a jury could permissibly find that Brillhart's apprehension was reasonable.

Moreover, Sharp's harassment was pervasive. Brillhart testified that it occurred "[a]nywhere that he would see me. If I was sitting out on the porch, if I was walking – taking the dog out, or if I was walking to the mailbox, anywhere I would be out." (*Id.* at 58:2-5.) The court cannot say as a matter of law that the alleged perpetrator of a sexual assault who, on multiple occasions, walks past his victim's home to leer (*id.* at 61:22-62:3), stops his vehicle to sit and stare at his victim (*id.* at 59:24-60:2), and frequently winks at his victim (*id.* at 65:10-15) does not create in the victim a reasonable fear of battery.

Sharp contends that his alleged harassment of Brillhart cannot constitute assault because he was always at least eight to twelve feet away from her and often in his vehicle. Sharp argues that, as an 82 year-old with limited mobility, he was in no position to carry out any threat of battery. It is far from certain, however, that Sharp, who was spry enough to repeatedly grope Brillhart as she resisted (Compl. ¶¶ 9-14; Brillhart Dep. at 35:14-22, 40:11-41:11), force Brillhart to kiss him (Compl. ¶ 15; Brillhart Dep. at 35:20-22), and attempt to pry her legs apart

17

(Compl. ¶ 17), would not be able to cover eight feet of ground and offensively touch Brillhart.

Having determined that the question of whether Sharp assaulted Brillhart is one for the jury, the inquiry becomes whether Sharp's harassment consisted of "isolated, intermittent acts or [was] part of a persistent, on-going pattern." *Cowell*, 263 F.3d at 292 (citing *West*, 45 F.3d at 755).  In making this determination, the court must consider three factors:  "(1) subject matter – whether the violations constitute the same type ..., tending to connect them in a continuing violation; (2) frequency – whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence – whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights." *Id.* (citing *West*, 45 F.3d at 755 n.9).  With regard to subject matter, Sharp's actions, beginning with the March 10, 2005 incident and continuing until Brillhart moved out of Sharp's trailer park in June 2005, are all part of the same type of sexual harassment.  With regard to frequency, Sharp's harassment of Brillhart recurred regularly and repeatedly between March 10, 2005 and the date that Brillhart finally moved out.  Finally, with regard to degree of permanence, while the March 10, 2005 incident should have indicated to Brillhart that a tort had been committed, the ultimate trigger for the claims here, especially

the FHA claim which supports federal jurisdiction, was finally forced to leave the trailer park in June 2005.  Brillhart's claim was brought within two years of this trigger.; she did not "sit on her claim."  Balancing the equities in this case, *see id.* ("The continuing violations doctrine is an equitable exception to the timely filing requirement."), the Court concludes that the continuing violations doctrine relieves Brillhart from the statute of limitations for her assault claim.  *Cf. id.* at 295 (rejecting application of continuing violations doctrine to deem timely a due process claim brought seven years after accrual).

In sum, Sharp will be granted summary judgment on Brillhart's battery and intentional infliction of emotional distress claims because these claims are barred by the statute of limitations.  Summary judgment will be denied as to Brillhart's assault claim because, while also time-barred, this claim is saved from the statute of limitations by the continuing violations doctrine.

**B.    FHA and PHRA Claims**

The Fair Housing Act, Title VIII of the Civil Rights Act of 1968, prohibits housing discrimination on the basis of *inter alia* gender.  42 U.S.C. §  3601 *et seq.* Specifically, the FHA provides that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of ... sex."

19

42 U.S.C. § 3604(b).  Similarly, the PHRA makes it unlawful to "[d]iscriminate against any person in the terms or conditions of selling or leasing any housing accommodation or commercial property or in furnishing facilities, services or privileges in connection with the ownership, occupancy or use of any housing accommodation or commercial property because of ... sex."  43 Pa. C.S. § 955(h)(3).[5]  In addition, the FHA makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" any right protected by the act.  42 U.S.C. § 3617.

Although never explicitly labeled as such, it is clear from her submissions that the theory of Brillhart's FHA and PHRA causes of action is a hostile housing environment claim based on the sexual assault and harassment she suffered at the hands of Sharp.[6]  Courts have uniformly recognized that sexual harassment is a form of sex discrimination that may violate either § 3604 or § 3617.  *See, e.g.*, *Hall v. Meadowood Ltd. P'ship*, 7 Fed. Appx. 687, 689 (9th Cir. 2001); *DiCenso*

---

[5] The Third Circuit has noted that "the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fasold v. Justice*, 409 F.3d 178, 184 n.8 (3d Cir. 2005). Because the PHRA provisions at issue contain no such language, the Court will analyze the plaintiff's FHA and PHRA claims under the same standards and caselaw.

[6] The defendant recognizes the plaintiff's cause of action is a hostile environment claim (*see* Doc. 28 at 16) but also directs argument against a potential disparate treatment claim (*see id.* at 15-16).  While this position is understandable given the lack of an explicit theory from the plaintiff, the Court does not construe the plaintiff's complaint or submissions as stating a disparate treatment claim.

*v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996); *Honce v. Vigil*, 1 F.3d 1085, 1090

(10th Cir. 1993); *Shellhammer v. Lewallen*, 770 F.2d 167 (6th Cir. 1985)

(unpublished); *Glover v. Jones*, 522 F. Supp. 2d 496, 503 (W.D.N.Y. 2007);

*Richards v. Bono*, 2005 WL 1065141, at *2 (M.D. Fla. May 2, 2005); *United*

*States v. Koch*, 352 F. Supp. 2d 970, 980-81 (D. Neb. 2004); *Rich v. Lubin*, 2004

WL 1124662, at *4 (S.D.N.Y. May 20, 2004); *Zhu v. Fisher, Cavanaugh, Smith &*

*Lemon*, 151 F. Supp. 2d 1254, 1259 (D. Kan. 2001); *Walker v. Crawford*, 1999

WL 33917846, at *7 (N.D. Ohio Sept. 16, 1999); *Reeves v. Carrollsburg*

*Condominium Unit Owners Ass'n,* 1997 WL 1877201, at *5 (D.D.C. Dec. 18,

1997); *Burgess v. United States*, 1997 WL 227815, at *5 (N.D. Cal. Apr. 29,

1997); *Williams v. Poretsky Mgmt.*, 955 F. Supp. 490, 494-96 (D. Md. Oct. 15,

1996); *Beliveau v. Caras*, 873 F. Supp. 1393, 1396-97 (C.D. Cal 1995); *Grieger v.*

*Sheets*, 1989 WL 38707, at *2 (N.D. Ill. Apr. 10, 1989); *People ex rel. Abrams v.*

*Merlino*, 694 F. Supp. 1101, 1004 (S.D.N.Y. 1988).  These courts have found that

sexual harassment is actionable under the FHA because Title VIII shares the same

purposes as Title VII under which a plaintiff may bring a hostile work

environment claim, because sexual harassment is a form of sex discrimination, and

because of the overwhelming precedent that also recognizes a hostile housing

environment claim.  *See Richards*, 2005 WL 1065141, at *2& n.10 (collecting

cases); *Williams* 955 F. Supp. at 495 (same).

As with other aspects of FHA claims, courts have analogized Title VIII

hostile housing environment claims to Title VII hostile work environment claims,

and applied the Title VII standard in analyzing Title VIII claims.  *See, e.g.*,

*DiCenso*, 96 F.3d at 1008; *Honce*, 1 F.3d at 1090; *see also Cmty. Servs., Inc. v.*

*Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005) (recognizing that courts

generally apply Title VII standards to FHA claims); *Lapid-Laurel, L.L.C. v.*

*Zoning Bd. of Adjustment of the Twp. of Scotch Plains*, 284 F.3d 442, 466 (3d Cir.

2002) (same);  *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 148 (3d Cir. 1977)

(same).  Applying the Title VII hostile work environment standard to the housing

context, to make out a claim for discrimination resulting from a hostile housing

environment, a plaintiff must show that (1) she suffered intentional discrimination

because of her sex, (2) the discrimination was pervasive and regular[7], (3) the

discrimination detrimentally affected a term, condition, or privilege of housing, (4)

---

[7] The Third Circuit has noted that its formulation of this prong of the hostile environment test differs from the Supreme Court's.  While the Third Circuit requires the discrimination to be "pervasive and regular," the Supreme Court requires the plaintiff to demonstrate that the discrimination was "severe or pervasive."  *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276 n.6 (3d Cir. 2001).  In this case, the record on the present motion, viewed in the light most favorable to the plaintiff, reveals harassment that was both pervasive and regular, and so both tests are satisfied.  *See id.*

the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of respondeat superior liability, if alleged. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990); *see also Williams* 955 F. Supp. at 496.

In this case, the second, third, and fourth prongs of the test are clearly met. Brillhart suffered severe sexual harassment – in fact sexual battery – and the harassment continued regularly after the initial attack.  Sharp threatened Brillhart with eviction if she exposed his assault and harassment, and it is beyond peradventure that a reasonable woman in Brillhart's position would be detrimentally affected by the physical attack and harassment to which she was subjected.  The fifth prong, respondeat superior, is not at issue here.

Sharp argues that Brillhart has not satisfied the first prong of the *Andrews* test because she has not met her burden of producing evidence to demonstrate that he assaulted her because of a discriminatory animus toward women.  (Doc. 28 at 15; Doc. 41 at 8, 9.)  Sharp further argues that the opinion of his expert, Dr. Cadieux, establishes that his alleged inappropriate actions were the result of senile dementia, not intentional discrimination.  (Doc. 28 at 13-14; Doc. 41 at 8-9.) Sharp's arguments overstate Brillhart's burden and require the Court to make an

23

improper inquiry at this stage of the proceedings, and accordingly, must be rejected.

In *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265 (3d Cir. 2001), the Third Circuit discussed in detail the burden a plaintiff must meet to satisfy the first prong of the *Andrews* test.  In resolving the defendant's motion for summary judgment that case, which involved a claim of religiously hostile work environment, the district court required the plaintiff to demonstrate discriminatory animus to meet the first prong of the *Andrews* test.  *Id.* at 277.  On appeal, the Third Circuit disagreed with this approach and held that "[t]he proper inquiry at this stage was whether a reasonable factfinder could view the evidence as showing that [the plaintiff's] treatment was attributable to her religious faith and practice." *Id.*  The court also stressed that, on a defendant's summary judgment motion, the evidence must be viewed in the light most favorable to the plaintiff, and that the plaintiff need not demonstrate that a reasonable person would necessarily construe the conduct in question as being improperly motivated.  *Id.*  The court stated that "we have never required a plaintiff to demonstrate direct proof that her harasser's intent was to create a discriminatory environment.  Instead, we have held that, with respect to certain conduct, the intent to discriminate can be inferred." *Id.* at 278 (citing *Andrews*, 895 F.2d at 1482 n.3).  The court concluded:

> The first prong of the *Andrews* test was not designed to protect harassers who fail to recognize the hostile or abusive nature of their comments and actions. Our case law does not indicate that the first prong requires a factfinder to peer inside the harasser's mind. Rather, it merely requires a showing that the offender's behavior was ... based on a protected category.

*Id.* (citations omitted).

In this case, Brillhart has presented sufficient evidence from which a reasonable factfinder could infer that Sharp's actions were premised on her gender. Sharp repeatedly grabbed Brillhart's breasts, stating "it doesn't hurt to feel a little titty" or words to that effect. He attempted to pry Brillhart's legs apart and demanded sex. Significantly, Sharp stated "I do this all the time," and Brillhart introduced allegations of similar sexual assaults and harassment committed by Sharp against six other women.[8] Explicitly sexual harassment is itself evidence of discrimination based on sex. As the Third Circuit stated in *Andrews*, "[t]he intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is

---

[8] The parties focus to an excessive degree on the fact that Sharp is also alleged to have sexually assaulted a minor boy and whether Sharp could have mistaken the boy for a female because of his appearance and sexual orientation. While Sharp's similar treatment of a boy may be relevant to a disparate treatment claim, Sharp could still be liable for creating a hostile housing environment for Brillhart regardless of a lack of disparate treatment. *See Abramson*, 260 F.3d at 281 n.11. Moreover, the fact that Sharp also molested a minor boy carries little weight toward disproving discriminatory intent in light of evidence indicating that Sharp sexually assaulted no less than seven women, and certainly does not establish as a matter of law that Sharp was not motivated by Brillhart's or the other women's gender.

implicit, and thus should be recognized as a matter of course." *Andrews*, 895 F.2d at 1482 n.3. The evidence of sexual assault and sexual harassment presented by Brillhart is sufficient to raise, at the very least, an inference of discrimination based on sex. Brillhart has therefore met the first prong of the *Andrews* test.

The evidence presented by Sharp, in the form of Dr. Cadieux's opinion, certainly raises a genuine dispute about whether his actions were motivated by Brillhart's sex, and ultimately, may prove more convincing to a jury. On this summary judgment motion, however, the Court's task is not to determine which inference a jury may find more convincing. Sharp may be liable for creating a hostile housing environment even if he failed to recognize the hostile or abusive nature of his actions, *Abramson* 260 F.3d at 278, and Brillhart is not required to peer inside Sharp's head to reveal what was in his mind at the time of the assault and harassment, *id.* Given the sexually explicit nature of Sharp's actions and the evidence of repeated assaults and harassment of women, a reasonable jury could conclude that Sharp was motivated by Brillhart's gender. This showing is sufficient for Brillhart to survive summary judgment.

Applying the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Sharp also argues that his senile dementia is a legitimate, nondiscriminatory reason for his actions, that Brillhart has not shown

that this reason is pretext, and therefore he is entitled to summary judgment.  The

Court rejects this argument because the *McDonnell Douglas* burden-shifting

framework is inapplicable to the hostile environment claim at issue here.

Numerous courts, both within this circuit and elsewhere, have held that

hostile environment claims are governed by the usual orders of proof under a

totality of the circumstances test analogous to *Andrews*, rather than the *McDonnell*

*Douglas* test.  *See, e.g.*, *Fuller v. Global Custom Decorating*, 2007 WL 44507, at

*11 (W.D. Pa. Jan. 5, 2007); *Ferraro v. Bell Atlantic Co., Inc.*, 2 F. Supp. 2d 577,

585 n.4 (D.N.J. 1998); *Dickerson v. State of N.J. Dep't of Human Servs.*, 767 F.

Supp. 605, 613 (D.N.J. 1991); *see also Johnson v. Booker T. Washington Broad.*

*Serv., Inc.*, 234 F.3d 501, 510 (11th Cir. 2000); *Apgar v. State*, 221 F.3d 1351

(table), 2000 WL 1059444, at *7 (10th Cir. 2000); *Pollard v. E.I. DuPont de*

*Nemours Co.*, 213 F.3d 933, 943 (6th Cir. 2000), *rev'd on other grounds*, 532 U.S.

843 (2001); *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 621 (6th Cir. 1986),

*abrogated by*, *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993); *Katz v. Dole*,

709 F.2d 251, 255 (4th Cir. 1983) *abrogation on other grounds recognized by*

*Mikels v. City of Durham*, 183 F.3d 323, 329 n. 4 (4th Cir. 1999); *Henson v. City*

*of Dundee*, 682 F.2d 897, 905 n.11 (11th Cir. 1982); *Cole v. Black & Decker (US),*

*Inc.*, 2008 WL 2704533, at *6 n.6 (W.D. Tenn. July 3, 2008); *Reyes v. Seaton*

27

*Enterprises, LLC*, 2008 WL 2066447, at *4 (E.D. Tenn. May 13, 2008); *Quarles v. Con-Way Freight, Inc.*, 2008 WL 1994916, at *5 (M.D. Fla. May 8, 2008); *Jackson v. Carolinas Healthcare Sys.*, 2007 WL 4287749, at *9 (W.D.N.C. Dec. 5, 2007); *Vandiver v. Little Rock Sch. Dist.*, 2007 WL 2462023, at *16 (E.D. Ark. Aug. 27, 2007); *Hollar v. RJ Coffey Cup, LLC*, 505 F. Supp. 2d 439, 451 n.5 (N.D. Ohio 2007); *O'Phelan v. Federal Express Corp.*, 2005 WL 2387647, at *8 (N.D. Ill. Sept. 27, 2005); *Shields v. BCI Coca-Cola Bottling Co. of Los Angeles*, 2005 WL 2045887, at *10 (W.D. Wash. Aug. 25, 2005); *Goldschmidt v. New York State Affordable Housing Corp.*, 380 F. Supp. 2d 303, 311 (S.D.N.Y. 2005); *Shelby v. American Colloid Co., Inc.*, 2005 WL 3804725, at *1 (M.D. Ala. Mar. 1, 2005); *Lewis v. Forest Pharm., Inc.*, 217 F. Supp. 2d 638, 653 (D. Md. 2002); *Janal v. Aramark Services, Inc.*, 2000 WL 1297708, at *4 (D. Or. Aug. 9, 2000); *Copeland v. Rosen*, 38 F. Supp. 2d 298, 306 (S.D.N.Y. 1999); *Gowens v. Springs Indus., Inc.*, 1997 WL 866614, at *8 n.4 (N.D. Ga. Apr. 8, 1997), *aff'd in part, rev'd in part*, 170 F.3d 188 (11th Cir. 1999) (table); *Doe By and Through Doe v. Petaluma City Sch. Dist.*, 949 F. Supp. 1415, 1423-24 (N.D. Cal. 1996); *Smith v. Hennepin Tech. Ctr.*, 1988 WL 53400, at *12 n.14 (D. Minn. May 26, 1988).

Other courts, however, have held that the *McDonnell Douglas* framework may apply to hostile environment claims. *See, e.g.*, *Straub v. First Media Radio,*

*LLC*, 2005 WL 3158042, at *8 n.2 (W.D. Pa. Nov. 28, 2005); *see also Graham v. Cingular Wireless, LLC*, 435 F. Supp. 2d 817, 822-23 (N.D. Ill. 2006); *Evarts v. S. New England Tel. Co.*, 2006 WL 2864716, at *15 (D. Conn. Oct. 2, 2006)*; Baloch v. Norton*, 355 F. Supp. 2d 246, 259 & n.4 (D.D.C. 2005); *Trujillo v. Bd. of Educ.*, 377 F. Supp. 2d 1020, 1031 (D.N.M. 2005); *King v. Auto, Truck, Indus. Parts & Supply, Inc.*, 21 F. Supp. 2d 1370, 1380 n.8 (N.D. Fla. 1998); *Cline v. Gen. Elec. Credit Auto Lease, Inc.*, 748 F. Supp. 650, 655 (N.D. Ill. 1990).  And frequently, courts have simply applied *McDonnell Douglas* to hostile environment claims without discussion.  *See, e.g., Lassiter v. Children's Hosp. of Philadelphia*, 2008 WL 304891, at *5 (E.D. Pa. Jan. 31, 2008); *Lindsey v. N.J. Dep't of Corr.*, 2007 WL 836667, at * 11 (D.N.J. Mar. 14, 2007); *Sykes v. Pa. State Police*, 2007 WL 141064, at *4 (W.D. Pa. Jan. 17, 2007); *Johnson v. Wal-Mart Stores, Inc.*, 2006 WL 1041699, at *4 n.1 (D. Del. Apr. 18, 2006); *Jackson v. Del. River and Bay Auth.*, 2001 WL 1689880, at *14 (D.N.J. Nov. 26, 2001); *Easley v. West*, 1994 WL 702904, at *9 (E.D. Pa. Dec. 13, 1994); *see also Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007); *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir. 2004); *Kaszynski v. Thompson*, 83 Fed. Appx. 526, 528 (4th Cir. 2003); *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 366 (S.D.N.Y. 2006); *Murphy v. M.C. Lint, Inc.*, 440 F. Supp. 2d 990, 1014 (S.D. Iowa 2006); *Torrez v.*

*Milk Prods., L.P.*, 402 F. Supp. 2d 773, 776 (W.D. Tex. 2005); *Maurey v. Univ. of S. Cal.*, 87 F. Supp. 2d 1021, 1035 (C.D. Cal. 1999).

Whether *McDonnell Douglas* applies to a hostile environment claims has been determined, in many cases, by whether the plaintiff has presented direct evidence of discrimination.  The *McDonnell Douglas*  burden-shifting framework was developed because of the usual absence of direct evidence of discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring) ("[T]he entire purpose of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by."); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996) ("The distinct method of proof in employment discrimination cases, relying on presumptions and shifting burdens of articulation and production, arose out of the Supreme Court's recognition that direct evidence of an employer's motivation will often be unavailable or difficult to acquire.").  Where such evidence exists, however, the *McDonnell Douglas* test may be inapplicable.  *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (stating, in the context of an ADEA claim supported by direct evidence of age discrimination, that "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination").  Thus, some courts have held that *McDonnell*

*Douglas* must be applied to hostile environment claims where the plaintiff presents no direct evidence of discrimination.  *See, e,g. Graham*, 435 F. Supp. 2d at 822-23; *Trujillo*, 377 F. Supp. 2d at 1031; *Cline*, 748 F. Supp. at 655.  In the same vein, however, several courts have held that *McDonnell Douglas* does not apply to hostile environment claims because discriminatory intent will be clear in all but the rarest cases of harassment.  *See, e.g.*, *Henson*, 682 F.2d at 905 n.11; *Jackson*, 2007 WL 4287749, at *9; *Doe*, 949 F. Supp. at 1423-24.  Following this line of reasons, in a case such as this, where sexually explicit harassment is to be considered its own proof of intent to discriminate, *Andrews*, 895 F.2d at 1482 n.3, the *McDonnell Douglas* framework does not apply.

Perhaps even more persuasive is the reasoning of several courts which have held that *McDonnell Douglas* is inapplicable to hostile environment claims because there can be no legitimate, nondiscriminatory reason for a hostile environment.  *See, e.g.*, *Pollard*, 213 F.3d at 943; *Hollar*, 505 F. Supp. 2d at 451 n.5; *O'Phelan*, 2005 WL 2387647, at *8; *Lewis*, 217 F. Supp. 2d at 653.  In the disparate treatment context, the *McDonnell Douglas* prima facie case raises an inference of discrimination regarding tangible acts affecting a plaintiff "only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."  *Texas Dep't of Cmty.*

31

*Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).  A defendant may then rebut this presumption by introducing evidence of a legitimate, nondiscriminatory reason for its acts.  *Id.* at 254-55.  Where a plaintiff meets the requirements of the *Andrews* test, however, by showing an objectively and subjectively hostile environment, she has already demonstrated the illegitimacy of the defendant's actions.  As the Supreme Court has stated, "the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality."  *Harris*, 510 U.S. at 22.  A defendant may assert affirmative defenses to such a claim, *see, e.g.*, *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), but cannot attempt to legitimate the hostile environment which, by its very existence, violates anti-discrimination law.  For this additional reason, the Court holds that the *McDonnell Douglas* framework is inapplicable here.

Further support for this position can be found in the Third Circuit's decision in *Abramson*.  There, the court held that the district court had erred by conflating the plaintiff's disparate treatment and hostile environment claims in finding that the plaintiff could not establish a hostile work environment because she had not

32

presented sufficient evidence that the legitimate, nondiscriminatory reason advanced by her employer was pretext. *Abramson*, 260 F.3d at 281 n.11. The Third Circuit noted that the plaintiff would still have a hostile work environment claim even if her employer had demonstrated a legitimate, nondiscriminatory reason for its actions because none of the five prongs of the *Andrews* test are precluded by a failure to establish disparate treatment. *Id.* The Third Circuit's recognition that a plaintiff may state a hostile environment claim even if a defendant meets its burden at the second step of the *McDonnell Douglas* analysis strongly suggests that the burden-shifting framework is inapplicable to hostile environment claims.

In sum, the *Andrews* test governs Brillhart's hostile housing environment claim, and she has met the requirements of that test. Sharp's attempt to have us evaluate this claim based on the *McDonnell Douglas* framework is rejected. The latter test is an illogical vehicle to utilize where, as here, the allegations colorably and directly show discrimination. Sharp's defense in the form of Dr. Cadieux's opinion will be left for the jury to consider. Sufficient evidence has been presented to allow a jury to decide whether Sharp's sexual assault and harassment of Brillhart were motivated by her gender, and therefore, Sharp's motion for

summary judgment with regard to Brillhart's FHA and PHRA claims will be denied.

## V.     CONCLUSION

For the foregoing reasons, Sharp's motion for summary judgment will be granted as to Brillhart's battery and intentional infliction of emotional distress claims.  Summary judgment will be denied as to Brillhart's assault, FHA, and PHRA claims.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     Defendant's Motion to Strike (Doc. 39) is GRANTED.  The affidavits of Attorney Holt submitted in opposition to the Defendant's motion for summary judgment are stricken from the record.

2.     Defendant's Motion for Summary Judgment (Doc. 25) is GRANTED in part and DENIED in part to the extent indicated above.


/s/ John E. Jones III
John E. Jones III
United States District Judge